AO 106 (Rev. 06/09) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Southern District of California

FILED
MAR 1 5 2018
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )   Case No.
Black iPhone 7 A1661, IMEI: 355834084778698 )
) **18MJ1234**
)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
  See Attachment A (incorporated herein)

located in the _____Southern_____ District of _____California_____, there is now concealed *(identify the person or describe the property to be seized)*:
  See Attachment B (incorporated herein)

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
  ☑ evidence of a crime;
  ☑ contraband, fruits of crime, or other items illegally possessed;
  ☑ property designed for use, intended for use, or used in committing a crime;
  ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

  *Code Section*                    *Offense Description*
  21 U.S.C. 952, 960, 963           Importation of a Controlled Substance

The application is based on these facts:
  See Affidavit of Meaghan Queally (incorporated herein)

  ☑ Continued on the attached sheet.
  ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*/s/ Meaghan Queally*
Applicant's signature

HSI Special Agent Meaghan Queally
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 3/15/18

*/s/ Bernard G. Skomal*
Judge's signature

City and state: San Diego, CA

Hon. Bernard G. Skomal, U.S. Magistrate Judge
*Printed name and title*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| IN THE MATTER OF THE SEARCH OF<br><br>Black iPhone 7 A1661<br>IMEI: 355834084778698 | AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT |
|---|---|

I, Meaghan Queally, Special Agent with the United States Department of Homeland Security ("DHS"), Homeland Security Investigations ("HSI"), having been duly sworn, state as follows:

## INTRODUCTION

1. This affidavit is made in support of an application for a warrant to search: A black iPhone 7, IMEI: 355834084778698 (hereinafter "Target Telephone") seized from Javier URQUIDEZ (hereinafter "URQUIDEZ"), as more particularly described in Attachment A.

2. Target Telephone was seized from URQUIDEZ on or about January 15, 2018 at about the time of his arrest. It is believed that Target Telephone was used by URQUIDEZ to communicate with co-conspirators during a drug smuggling event on January 15, 2018. URQUIDEZ has been charged with importation of approximately 26.48 kilograms of methamphetamine in the Southern District of California. Probable cause exists to believe that Target Telephone contains evidence relating to violations of Title 21, United States Code Sections 952 and 960. Target Telephone is currently stored at the Otay Mesa Vault, 9777 Via De La Amistad, San Diego, CA 92154.

3. Based on the information below, there is probable cause to believe that a search of Target Telephone will produce evidence of the aforementioned crimes, as described in Attachment B.

4. This affidavit is based upon information I have gained through training and experience, as well as upon information related to me by other individuals, including law

1 enforcement officers. In preparation of this affidavit, I have discussed the facts of this case with other law enforcement agents and officers within DEA and the Department of Homeland Security. Because this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known concerning this investigation but have set forth only the facts that I believe are necessary to establish probable cause to believe that evidence relating to violations of Title 21, United States Code, Sections 952, and 960, described in Attachment B, is located on the cellular phone described in Attachment A.

## EXPERIENCE AND TRAINING

5. I am a Special Agent with the Department of Homeland Security, Homeland Security Investigations (HSI), who is assigned to the San Ysidro office under the Special Agent in Charge in the San Diego office. I have been so employed since 2007. As part of my daily duties as an HSI agent, I investigate criminal violations relating to human smuggling and narcotics smuggling. I have received training from the Federal Law Enforcement Training Center and other law enforcement agencies in the area of narcotics smuggling. I have participated in dozens of narcotics smuggling investigations. I am in routine contact with experts in the field of narcotics and human smuggling investigations. As a federal agent, I am authorized to investigate violations of United States laws and I am a law enforcement officer with the authority to execute warrants issued under the authority of the United States. In preparation for this affidavit, I have discussed the facts of this case with other law enforcement agents/officers within HSI and other agencies.

6. Although the nature of that work with Department of Homeland Security, Immigration and Customs Enforcement, Homeland Security Investigations require that I keep apprised of trends and developments involved in the investigations of drug traffickers, I regularly communicate with agents from the Drug Enforcement Administration, United States Border Patrol, Customs and Border Protection, and various other local and state law enforcement officers operating within the Southern District of California.

7. By virtue of my employment as a Special Agent with the Department of Homeland Security, Immigration and Customs Enforcement, Homeland Security Investigations, I have had training in and performed various tasks, which include, but are not limited to:

   a. Functioning as a surveillance agent and thereby observing and recording movements of persons trafficking in controlled substances and those suspected of trafficking in controlled substances;

   b. Participating in the tracing of monies and assets gained by controlled substance traffickers from the illegal sale of controlled substances and/or the laundering of monetary instruments;

   c. Interviewing witnesses, cooperating individuals, and informants relative to the illegal trafficking of controlled substances and the distribution of monies and assets derived from the illegal trafficking of controlled substances (laundering of monetary instruments); and

   d. Functioning as a case agent, which entails the supervision of specific investigations involving the trafficking of narcotics and the laundering of monetary instruments.

8. Through the course of my training, investigations, and conversations with other law enforcement personnel, I am aware that it is a common practice for drug smugglers to work in concert with other individuals and to do so by utilizing cellular telephones, pagers and portable radios to maintain communications with co-conspirators in order to further their criminal activities. Conspiracies involved in the smuggling and trafficking of drugs generate many types of evidence including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements of travel and payment, names, photographs, text messaging, and phone numbers of co-conspirators. For example, load drivers smuggling controlled substances across the border are typically in telephonic contact with co-conspirators immediately prior to and following the crossing of the load vehicle, at which time they receive instructions on how to cross and where and when to deliver the controlled substance.

9. In preparing this affidavit, I have conferred with other agents and law enforcement personnel, who are experienced in the area of drug investigations, and the opinions stated below are shared by them. Further, I have personal knowledge of the following facts, or have had them related to me by persons mentioned in this affidavit.

10. Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in narcotics smuggling investigations, and all the facts and opinions set forth in this affidavit, I submit the following:

    a. Drug smugglers will use cellular telephones because they are mobile and they have instant access to telephone calls, text, web, and voice messages.

    b. Drug smugglers believe that cellular telephones provide greater insulation and protection against court-ordered wiretaps, and they believe in the inability of law enforcement personnel to simultaneously track the originating and destination telephone numbers of calls placed to and from their cellular telephones.

    c. Drug smugglers will use cellular telephones because they are able to actively monitor the progress of their illegal cargo while the conveyance is in transit.

    d. Drug smugglers and their accomplices will use cellular telephones because they can easily arrange and/or determine what time their illegal cargo will arrive at predetermined locations.

    e. Drug smugglers will use cellular telephones to direct drivers to synchronize an exact drop off and/or pick up time of their illegal cargo.

    f. Drug smugglers will use cellular telephones to notify or warn their accomplices of law enforcement activity to include the presence and posture of marked and unmarked units, as well as the operational status of Border Patrol checkpoints.

**STATEMENT OF PROBABLE CAUSE**

11. On January 15, 2018 at approximately 4:37 a.m., Javier URQUIDEZ etnered the United States from Mexico at the San Ysidro, California, Port of Entry as the driver, sole

occupant and registered owner of a 2015 red Nissan Altima bearing California license plate 7EOJ919. During a border inspection of the vehicle, Customs and Border Protection Officers (CBPO) observed black plastic bags in the spare tire well in the trunk of the vehicle. Inside the black plastic bags, CBPOs discovered 56 packages containing a crystal like substance that field tested positive for the properties of methamphetamine. Lab tests have confirmed that the substance concealed within the vehicle contained 25.52 kilograms of pure methamphetamine.

12. On January 15, 2018, at approximately 8:00 a.m., Homeland Security Investigations (HSI) Special Agents advised URQUIDEZ that he was under arrest and read him his Miranda rights in the English language. URQUIDEZ stated that he understood his rights and agreed to answer questions. In part and in summary, URQUIDEZ denied knowledge of the narcotics concealed in his vehicle.

13. At the time of URQUIDEZ's arrest, CBP officers seized Target Telephone from him as evidence.

14. Based upon my experience and investigation in this case, I believe that URQUIDEZ, as well as other persons, was involved in an on-going conspiracy to import, transport, possess, and distribute methamphetamine throughout the State of California. Based on my experience investigating narcotics smugglers, I also believe that URQUIDEZ used Target Telephone to coordinate with co-conspirators regarding the transportation and delivery of the methamphetamine and cocaine, and otherwise, to further this conspiracy both inside and outside the United States. I also know that recent calls made and received, phone numbers, contact names, electronic mail (email) addresses, appointment dates, messages, pictures and other digital information are stored in the memory of electronic devices described herein, which identify other persons involved in narcotics trafficking activities.

15. Drug conspiracies require detailed and intricate planning to successfully evade detection. In my training, education and experience, I have learned that the planning and coordination of a drug conspiracy requires planning and coordination in the days, weeks, and often months prior to the event. Additionally, co-conspirators are often unaware of the

subject's arrest and will continue to attempt to communicate with the subject via their cellular phone after the arrest to determine the whereabouts of their valuable cargo. Further, I have reviewed the crossing records for URQUIDEZ and the vehicle. From those records, I determined that URQUIDEZ began crossing the load vehicle on December 20, 2015. Given this, I request permission to search the Target Devices for evidence dating back to June 16, 2017, up to and including through January 16, 2018.

## PROCEDURES FOR ELECTRONICALLY STORED INFORMATION AS TO THE CELLULAR TELEPHONE

16. It is not possible to determine, merely by knowing the cellular telephone's make, and FCC, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

17. Following the issuance of this warrant, I will collect the subject cellular telephones and subject them to analysis. All forensic analysis of the data contained within the telephones and their memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

18. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days, absent further application to this court.

## CONCLUSION

19. Based on the aforementioned factual information, I respectfully submit that there is probable cause to believe that evidence of violations of Title 21, United States Code, Sections 952 and 960 may be located on Target Telephone described in Attachment A. I, therefore, respectfully request that the attached warrant be issued authorizing the search and seizure of the items listed in Attachment B.

_____
Meaghan Queally
Special Agent
Homeland Security Investigations

SUBSCRIBED and SWORN to before me
this 15 day of March, 2018

_____
THE HONORABLE BERNARD G. SKOMAL
UNITED STATES MAGISTRATE JUDGE

7

# ATTACHMENT A

## PROPERTY TO BE SEARCHED

A Black iPhone 7 A1661, IMEI: 355834084778698, seized from Javier URQUIDEZ on January 15, 2018 at the San Ysidro, California, Port of Entry. It is currently stored at the Otay Mesa Vault, 9777 Via De La Amistad, San Diego, CA 92154.